## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANDREW SIMMS,                          :
                                       :   CIVIL ACTION
      Plaintiff                    :
                                       :
   vs.                              :   NO. 20-CV-1410
                                       :
TAMMY FERGUSON, <u>et</u>. <u>al</u>.,              :
                                       :
      Defendants                   :

## <u>MEMORANDUM AND ORDER</u>

**JOYNER, J.**                                **July 28 , 2021**

     This civil rights action is presently before this Court on Motion of Defendants for Summary Judgment and/or Partial Summary Judgment.[1]  As explained in the pages which follow, the Motion shall be granted in part.

### <u>History of the Case</u>

     Plaintiff Andrew Simms is a Pennsylvania state prisoner who is incarcerated at the State Correctional Institution ("SCI") Phoenix in Collegeville, Montgomery County, Pennsylvania where he is serving a sentence for attempted murder.  Plaintiff's complaint alleges that on May 25, 2019, after being escorted

---

1  In their motion, Defendants acknowledge that Plaintiff's excessive force claims against Defendants Hunter and McLean present genuine issues of material fact and thus at least as to these defendants, the motion seeks only partial summary judgment.

back to his cell on the Restricted Housing Unit following a haircut, he was informed that his cell was to be subjected to a search.  The cell was then searched by three of the Defendants - Corrections Sergeant Hunter, and Corrections Officers Martinez and McLean, during the course of which items were found which the officers believed to be contraband.  Plaintiff, who had remained handcuffed and had been standing outside the cell door, was directed to come inside to identify the items found. Plaintiff responded that the items were not contraband but were just trash and he proceeded to put the items in the toilet. (Compl., ¶s 27-28).  Plaintiff alleges that Defendant Hunter then punched him in the face, climbed on him, "choked him using a martial arts style neck lock," and told him "that he would kill him and make it look like a suicide," while Defendants McClean and Martinez first "body slammed" him and then "proceeded to punch and kick him repeatedly in the back." (Compl., ¶s 29-31). "Plaintiff was then escorted to the medical unit where he was treated for injuries to his back, neck, mouth as well as cuts to his wrist" which plaintiff contends "resulted in permanent scars."  (Compl., ¶ 34).

According to the complaint, upon his return to his cellblock, Plaintiff reported the abuse which he had suffered to Lieutenant Estrada and requested that he be provided with grievance forms.  In response, Defendant Hunter is alleged to

have informed Plaintiff that "he knew how to fix a snitch," and had Plaintiff moved to a sensory deprivation cell[2], where he ultimately remained until September 26, 2019. (Compl., ¶s 18, 35-36).  Some three days later, on May 28th, Plaintiff reported the abuse and Hunter's retaliation to the Unit Manager, Defendant Andretta Golden but she refused to move him to a different cell.  (Compl., ¶ 37).

Plaintiff alleges still other incidents of retaliation against him by Defendants, purportedly for his pursuit of grievances against them.  These include: (1) being denied access to shower facilities from May 27 – July 5, 2019; (2) being denied access to and the opportunity to sign up for yard/exercise time from May 31 – July 9, 2019; (3) having been charged with a misconduct as the result of a June 7, 2019 search of his property by Defendants Kayden, Mejias, Webster and Lahr which allegedly turned up MDMA; and (4) the destruction of his property, including legal documents and research, family photographs and address book by Defendant Hunter on July 19, 2019.  (Compl., ¶s 38-40, 43, 45).  Plaintiff had a disciplinary hearing before Hearing Examiner Defendant Joseph Yodis relative to his misconduct charge for the contraband found in his

---

[2]  Plaintiff appears to define a sensory deprivation cell to mean a cell which is "atypical of the average conditions in the RHU" since his "cell door did not afford him a view of the clock or television and there was no natural lighting, because the only outside window had been completely tinted in order to prevent individuals from seeing in or out."  (Compl., ¶ 37).

property on June 10, 2019, at the conclusion of which Plaintiff was found guilty and sentenced to 30 more days of disciplinary confinement.  (Compl., ¶ 44).

Plaintiff initiated this action in the Court of Common Pleas of Montgomery County Pennsylvania on February 6, 2020 alleging that, in taking the foregoing actions against him, Defendants violated his constitutional rights under the 1st, 8th and 14th Amendments to the U.S. Constitution and seeking redress pursuant to 42 U.S.C. § 1983.  Defendants removed the case to this Court on March 12, 2020.  Discovery has now concluded and Defendants move for the entry of judgment in their favor as a matter of law in accordance with Fed. R. Civ. P. 56.

### Standards for Ruling Upon Summary Judgment Motions

The relevant principles to be applied in adjudicating motions for summary judgment are articulated in Fed. R. Civ. P. 56(a), which reads:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

The standard for application of these principles is well and firmly established. "Under that standard, summary judgment is appropriate only if, construed in the light most favorable to

the non-moving party, the record shows that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law." Ali v. Woodbridge Township School District, 957 F.3d 174, 179 (3d Cir. 2020).  "`All justifiable inferences are to be drawn in the nonmovant's favor' but the 'mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue.'" Wharton v. Danberg, 854 F.3d 234, 241 (3d Cir. 2017)(quoting Giles v. Kearney, 571 F.3d 318, 322 (3d Cir. 2009)).  "A fact is only material if it might affect the outcome of the suit under the governing law." Ali, 957 F.3d at 180(citing Scheidemantle v. Slippery Rock Univ. State Sys. Of Higher Educ., 470 F.3d 535, 538 (3d Cir. 2006)).

## Discussion

As outlined above, this is an action under 42 U.S.C. § 1983[3] for the alleged violation of a number of Plaintiff's civil

---

[3]  Section 1983 provides as follows in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  …

rights by the named defendants.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed.2d 40 (1988).  Although "Section 1983, of course, is a statute, … it only provides a remedy and does not itself create any substantive rights."  Wilson v. Garcia, 471 U.S. 261, 278, 105 S. Ct. 1938, 1948, 85 L. Ed.2d 254 (1985). Its essence is to "create[] a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person."  Id.

At the outset, we shall grant the motion with regard to Corrections Officer Miguel Martinez as, by Plaintiff's own acknowledgement during his deposition, he named the wrong Martinez as a defendant.[4]  Accordingly, summary judgment is hereby entered in favor of Miguel Martinez as a matter of law and he is dismissed from the case.

---

[4]  Indeed, Plaintiff stated at his April 13, 2021 deposition: "…I don't think it's the Martinez that's down there, I think I got the wrong name.  I think his name is actually Alex, I have to switch that."  (Pl's 4/13/21 Dep., at p. 9, lines 8-11, a copy of which is attached to Defendants' Motion for Summary Judgment as Exhibit "A").  See also, Pl's Dep., at pp. 28, 36. Plaintiff never did move or otherwise make any effort to amend or correct this mistake and given that the statute of limitations has now run, we conclude that dismissal of this defendant is appropriate.

*A.  Plaintiffs' Official Capacity Claims*

Defendants first seek judgment on all of Plaintiff's claims against each of them in their official capacity for the reason that such claims are barred by operation of the Eleventh Amendment.  We agree.

"The Eleventh Amendment prohibits the commencement or prosecution of any suit against one of the United States by citizens of another State or citizens or subjects of any foreign State." Ex parte Young, 209 U.S. 123, 149, 28 S. Ct. 441, 52 L. Ed. 714 (1908). By this language, the Eleventh Amendment bars suits in federal courts by private parties against states, state agencies, and state officials in their official capacities absent consent by the state.  Floyd v. Attorney General of Pennsylvania, No. 17-2823, 722 Fed. Appx. 112, 114, 2018 U.S. App. LEXIS 442, 2018 WL 317266 (3d Cir. Jan. 8, 2018).  Hence, "[a]s a general rule, 'federal courts may not entertain a private person's suit against a State unless the State has waived its immunity or Congress has permissibly abrogated it.'" Delaware River Joint Toll Bridge Commission v. Secretary, Pennsylvania Department of Labor & Industry, 985 F.3d 189, 193 (3d Cir. 2021)(quoting Waterfront Commission of N.Y. Harbor v. Governor of N.J., 961 F.3d 234, 238 (3d Cir. 2020) and Va. Off.

For Prot. & Advoc. V. Stewart (VOPA), 563 U.S. 247, 254, 131 S.
Ct. 1632, 179 L. Ed.2d 675 (2011)).

There is, however, an important exception under the
equitable powers of the federal courts pursuant to which a
plaintiff may bring a federal suit against state officials.  Id.
(citing Ex Parte Young, supra.)  Under this exception which was
first recognized in Ex Parte Young, the court must "conduct a
straightforward inquiry into whether the complaint alleges an
ongoing violation of federal law" and whether it "seeks relief
properly characterized as prospective."  Id, 985 F.3d at 193-
194(quoting Verizon Md., Inc. v. Pub. Serv. Comm'n of Md., 535
U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed.2d 871 (2002)).  The
exception "is narrow: [i]t applies only to prospective relief,
does not permit judgments against state officers declaring that
they violated federal law in the past, and has no application in
suits against the States and their agencies, which are barred
regardless of the relief sought." Puerto Rico Aqueduct & Sewer
Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 146, 113 S. Ct.
684, 688, 121 L. Ed.2d 605 (1993).  Indeed, under the Ex Parte
Young exception, suits for prospective relief such as those
seeking injunctions "are deemed to be against officials and not
the States or their agencies, which retain their immunity
against all suits in federal court."  Id; Perez v. Ci, Civ. A.
No. 20-CV-4562, 2020 U.S. Dist. LEXIS 236198, n. 1, 2020 WL

7384888 (E.D. Pa. Dec. 16, 2020)("The Eleventh Amendment does
not bar claims for prospective relief against state officials,
provided the state is not the real party in interest, because
such claims are not treated as claims against the state.").

Here, the grounds underlying Plaintiffs' claims against the
defendants is clearly *not* prospective in nature.  Although
Plaintiff does ask that he be awarded a preliminary and
permanent injunction ordering Defendants to cease their
retaliation against him and ordering an expungement of the
misconduct from his prison record, there is nothing in the
complaint or in the record that suggests that the alleged
retaliation is still ongoing or that it continued past June 2019
such that injunctive relief would be warranted.  In all other
respects, Plaintiff is seeking damages to compensate him for the
physical injuries and property destruction which he allegedly
sustained as a result of the defendants' actions in May and June
of 2019.  As such, we find that Plaintiff's claims against
Defendants in their official capacities are really claims
against the State and in the absence of any showing of a waiver
of immunity, the protections of the Eleventh Amendment remain.
For these reasons, judgment is entered in favor of Defendants on
Mr. Simms' claims against them in their official capacities.

*B.  First Amendment Retaliation Claims*

Defendants Darryl Bradley, Richard Kayden, Jose Mejias, Matthew Lahr, Francis Webster and Joseph Yodis next seek the entry of judgment in their favor on Plaintiff's claims that they retaliated against him for filing grievances in violation of his rights under the First Amendment.  Again, the grounds for Plaintiff's First Amendment claims against these defendants are the deprivation of his exercise/yard and shower privileges, his placement in a so-called sensory deprivation cell, his receipt of threats of harm and misconducts if he did not rescind his grievances, and the refusal/failure to act on the grievances. Plaintiff contends that Defendant Yodis retaliated against him by finding him guilty of a misconduct and sentencing him to 30 days of disciplinary confinement.

The First Amendment guarantees "the right of the people … to petition the Government for a redress of grievances."  U.S. Const. Amend. 1.  The First Amendment of course, is applicable to the States under the Due Process Clause of the Fourteenth Amendment.  Eck v. Oley Valley School District, Civ. A. No. 19-1873, 2019 U.S. Dist. LEXIS 137743 at *9, 2019 WL 3842399 (E.D. Pa. Aug. 15, 2019)(citing Packingham v. North Carolina,  137 S. Ct. 1730, 1733, 198 L. Ed.2d 273 (2017)).  "The right to petition that the First Amendment protects 'extends to all departments of the Government, including administrative agencies… and

encompasses formal and informal complaints about matters of public and private concern." Adams v. Ross Township, No. 2:20-cv-00355, 2021 U.S. Dist. LEXIS 49320 at *12, 2021 WL 972520 (W.D. Pa. Mar. 16, 2021)(quoting Arnealt v. O'Toole, 513 Fed. Appx. 195, 198, n.2 (3d Cir. 2013) and Cole v. Encapera, 2015 U.S. Dist. LEXIS 166396, 2015 WL 8528449, at *5 (W.D. Pa. Dec. 11, 2015)). Indeed, "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 1703, 164 L. Ed.2d 441 (2006).

As with anyone else, retaliating against a prisoner for the exercise of his constitutional rights is unconstitutional. Bistrian v. Levy, 696 F.3d 352, 376 (3d Cir. 2012). "To prevail on a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must prove that (1) he engaged in 'constitutionally protected conduct,' (2) the defendant engaged in 'retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights,' and (3) 'a causal link existed between the constitutionally protected conduct and the retaliatory action.'" Baloga v. Pittston Area School District, 927 F.3d 742, 752 (3d Cir. 2019)(quoting Palardy v. Township of Millburn, 906 F.3d 76, 80-81 (3d Cir. 2018), *cert. denied*, No. 18-830, 139 S. Ct. 2011, 204 L. Ed.2d 215 (May 13, 2019) and

Thomas v. Indep. Twp., 463 F.3d 285, 296 (3d Cir. 2006)).  It is
of course axiomatic that "a defendant in a civil rights action
must have personal involvement in the alleged wrongs" and that
personal involvement can be shown through evidence "of
participation or actual knowledge and acquiescence." Thomas v.
Tice, 948 F.3d 133, 144 (3d Cir. 2020); Jones v. Kirchenbauer,
No. 21-1123, 2021 U.S. App. LEXIS 17486 at *5 (3d Cir. June 11,
2921); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.
1988).

   1.  *Defendant Darryl Bradley*

   Applying these legal precepts to the matter at bar,
Defendants first seek the entry of summary judgment in favor of
Darryl Bradley who Plaintiff alleged on June 7, 2019 had
threatened him with charges if he did not withdraw his
grievances and who allegedly never answered the grievance
Plaintiff filed on June 6, 2019.  The complaint avers that
because Plaintiff did not withdraw the grievances, he received a
misconduct report charging him with the possession of MDMA that
same day.  (Compl., ¶s 22, 23, 42, 52).

   In his deposition, Plaintiff clarified that his claim
against "Deputy Superintendent Bradley, who is in charge of
security" is premised upon his belief that he conspired with
Defendants Kayden, Webster, Mejias and Lahr, who filed the
misconduct for the MDMA as it was filed "directly after" he had

this conversation with Bradley.  Plaintiff also believes that
Bradley "sent a substance that he says was recovered from
[plaintiff] to the state police and those were where the charges
were stemmed from … so that was the substance that was recovered
on May 25th."   (Pl's Dep., attached as Exhibit "A" to Def's
Motion for Summary Judgment, pp. 32, 46-47).  Although Plaintiff
testified that several other inmates witnessed/overheard his
conversation with Bradley and could vouch for him, he has not
provided any evidence other than his own deposition testimony to
support these allegations.

     Defendant Bradley, for his part, has provided a signed and
sworn declaration in which he states that he is the Deputy
Superintendent for Internal Security at SCI Phoenix and SCI
Chester and that in those roles, he oversees the internal
security departments which includes internal investigations.
After reviewing the files on Plaintiff, Bradley attested that on
May 25, 2019, Plaintiff was escorted back to his cell where
Defendants Hunter and McLean and Alexander Martinez were
present, that K2 (synthetic marijuana) was found in the cell
which Plaintiff attempted to destroy by flushing it, and that
the three officers prevented him from doing so by "assist[ing]
him to the ground and restrain[ing] him."  (Exhibit "B" to Def's
Motion for Summary Judgment, ¶s 1, 3, 4(a) – (f)).  Defendant
Bradley's Declaration further states that Plaintiff has been

criminally charged for possession of the K2, that Plaintiff
filed a grievance against the officers for abuse which was
subsequently investigated and found unsubstantiated and that he
"never informed Lahr, Mejias, Kayden and Webster that Plaintiff
had filed any grievances or complained about any allegations of
abuse."  (Exhibit "B" to Def's Motion for Summary Judgment, ¶s
4(h), (i), (j), (m)).

Finally, in addition to attaching copies of the
investigation into Plaintiff's abuse complaint conducted by Lt.
John Everding, Defendant Bradley's Declaration attests that on
June 7, 2019 another search of Plaintiff's property in the
Restricted Housing Unit ("RHU") was conducted by Officers Lahr,
Mejias, Kayden and Webster during which Officer Lahr's K-9 (dog)
alerted and the illegal drug MDMA was found on a yellow piece of
paper in Plaintiff's possession.  As a result of this finding,
misconduct proceedings were initiated against Plaintiff by
Defendant Officer Kayden.  (Exhibit "B," ¶s (k), (l), (n)).
Bradley stated that he had no involvement in initiating these
misconduct proceedings.  (Exhibit "B," ¶ (o)).

In view of the lack of evidentiary support for Plaintiff's
version of events, we must agree that Defendant Bradley is
entitled to the entry of judgment in his favor at this time.  To
be sure, while Plaintiff may have sufficiently alleged a cause
of action against Bradley, the onus is now upon him to provide

concrete evidence of the truth of the averments contained in his complaint and a showing that Bradley himself participated in a pattern of retaliatory conduct against Plaintiff for filing a grievance or that he actually knew that Plaintiff was being retaliated against by the other defendants or acquiesced in their retaliatory actions.  Plaintiff has not provided the necessary evidence and accordingly, the motion for summary judgment shall be granted with respect to Darryl Bradley.

2.  *Defendants Kayden, Mejias, Lahr and Webster*

Defendants next seek the grant of summary judgment in favor of Defendants Richard Kayden, Jose Mejias, Matthew Lahr and Francis Webster for the reason that Plaintiff can show no evidence that they were aware of his grievances as is necessary to make out a cause of action for unlawful retaliation.

Evidence of knowledge of the filing of grievances by an inmate with prison administrators does indeed appear to be a necessary precondition to successful prosecution of a retaliation claim.  See, Booth v. King, No. 06-1552, 228 Fed. Appx. 167, 172, 2007 U.S. App. LEXIS 8327 (3d Cir. 2007) (affirming grant of summary judgment where plaintiff failed to provide any evidence that the parties responsible for searching his cell, confiscating his property and approving the disciplinary sanction against him had any knowledge of the grievances he filed with prison administrators or that the

administrators directed the search and seizure or had any knowledge that it had occurred).  See also: McKinney v. Perez, 2019 U.S. Dist. LEXIS 83123 at *8 - *9 (D.N.J. May 5, 2019)(mere allegations that Plaintiff "had words" with Defendants about his medical treatment and "immediately filed a grievance after he got back to the unit" held insufficient to establish the necessary causal link between Plaintiff's protected behavior and the alleged retaliatory act).

However, it has been said that in some cases "the requisite causal connection can be demonstrated by '(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'"  Obiegbu v. Werlinger, No. 13-1662, 581 Fed. Appx. 119, 122, 2014 U.S. Dist. LEXIS 17308, 2014 WL 4401647 (3d Cir. Sept. 8, 2014)(quoting Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)). But "even if timing alone could ever be sufficient to establish a causal link, the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred."  Estate of Marasco, 318 F.3d 497, 512 (3d Cir. 2003).

In this case, Plaintiff asserts that on June 7, 2019 Defendant Bradley went to his cell door and told him that if he didn't withdraw his grievances, he would "have him charged."

(Compl., ¶ 23).   Plaintiff refused to do so and "on that same day," he "received a misconduct report alleging "that a security team consisting of CO Kayden, CO Mejias, CO Webster, and K-9 Sergeant Lahr discovered 'MDMA' in his property." (Compl., ¶s 23, 43).   The Complaint further avers that as of June 7th, Plaintiff "had not had access to his property for 68 days" as "it had been stored in the medical triage unit on A-unit since April 1, 2019 and had been searched twice prior to this incident and inventoried by CO Snyder."  (Compl., ¶ 43).

A copy of the misconduct report dated June 7, 2019 is attached to the Declaration of Joseph Yodis (Exhibit "C" to Def's Motion for Summary Judgment) and it does indeed bear out Plaintiff's allegations that his property was searched on that date where it was stored in the Property Room on A-Unit.  The report states that Officers Kayden, Webster, Mejias and K-9 Sgt. Lahr conducted the search at approximately 11:50 a.m., that the canine alerted to Mr. Simms' property and that a yellow page/letter containing a white powdery substance was discovered which then tested positive for MDMA using a rapid scan system itemizer (ION SCAN).

Plaintiff testified in his deposition that he has never spoken with Mejias, Lahr or Webster, and that Officer Kayden told him that he doesn't remember being present during this search.  (Exhibit "A," pp. 48-49).  Because Officer Mejias is

the lead witness against Plaintiff in the proceeding against him that Bradley initiated four days after threatening to charge him if he didn't withdraw his grievances, Plaintiff admitted that he can only speculate and assume that these officers conspired with Bradley - he doesn't "know for a fact" that these officers knew that he had filed grievances. (Exhibit "A," pp. 48-50).   In addition, Bradley attested in his Declaration that he "never informed Lahr, Mejias, Kayden, and Webster that Plaintiff had filed any grievances or complained about any allegations of abuse."  (Exhibit "B," ¶ 4(m)).

While all of this militates in favor of granting summary judgment in favor of these defendants, we note that no evidence from any of these four defendants themselves has been provided. It may be well and good that Defendant Bradley did not inform them that Plaintiff had filed grievances, but this does not end the matter.  Indeed, it is entirely plausible that these officers may very well have learned through other channels and other individuals that Plaintiff was endeavoring to obtain relief for what he believed were violations of his constitutional rights through the prison grievance procedure. Further, we find the timing of Defendant Bradley's alleged appearance at Plaintiff's cell door and the search of his property and receipt of the misconduct for the MDMA possession to be quite suspicious, given that there were hours at most

between the two events and that Plaintiff was not and had not for some time been in possession of the property which was searched.  Again, at summary judgment the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a). It is only once a properly supported motion is made that the burden shifts to the non-moving party who must then set forth specific facts showing that there is a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2502, 91 L. Ed.2d 202 (1986); Noble v. City of Camden, 112 F. Supp. 3d 208, 219 (D. N.J. 2015).  And, in reviewing summary judgment motions, the court is required to examine the evidence in the light most favorable to the non-movant resolving all reasonable inferences in favor of that party.  Applying these well-settled principles and, mindful that Plaintiff is an incarcerated individual proceeding pro se, we find that genuine issues of material fact still exist as to whether Defendants Kayden, Mejias, Webster and Lahr knew that Plaintiff had filed grievances when they conducted the search of his property and/or that Plaintiff's grievances were the impetus for the search and his subsequent receipt of a misconduct. Accordingly, the Defendants' motion is denied as to Plaintiff's claims against these four officers.

*3.  Defendant Joseph Yodis*

Plaintiff has similarly claimed that Hearing Officer Yodis retaliated against him for exercising his right to seek redress from the prison by using prison grievance procedures by finding him guilty of misconduct and sentencing him to an additional 30 days of disciplinary confinement.  Summary judgment is now being sought as to this Defendant for the reason that he would have found Plaintiff guilty even if he had not filed grievances.

Again, "[a] prisoner alleging that prison officials have retaliated against him for exercising his constitutional rights must prove that: (1) the conduct in which he was engaged was constitutionally protected; (2) he suffered 'adverse action' at the hands of prison officials; and (3) his constitutionally-protected conduct was a substantial or motivating factor in the decision to discipline him."  Carter v. McGrady, 292 F.3d 152, 157-158(3d Cir. 2002)(citing Mount Healthy Bd. of Educ. v. Doyle, 129 U.S. 274, 287, 97 S. Ct. 568, 50 L. Ed.2d 471 (1977) and Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).  "Once a prisoner has made his prima facie case, the burden shifts to the defendant to prove by a preponderance of the evidence that it 'would have made the same decision absent the protected conduct for reasons reasonably related to penological interest.'"  Id, at 158.  On this point, courts "evaluate 'the quantum of evidence' of the misconduct to determine whether the prison

officials' decision to discipline an inmate for his violations of prison policy was within the broad discretion we must afford them." Rivera v. McCoy, No. 17-3202, 729 Fed. Appx. 142, 144, 2018 U.S. App. LEXIS 7503, 2018 WL 1468352 (3d Cir. Mar. 26, 2018)(quoting Watson v. Rozum, 834 F.3d 417, 426 (3d Cir. 2016)).  "[M]ost prisoners' retaliation claims will fail if the misconduct charges are supported by the evidence." Id, (quoting Watson, at 425).

In support of the instant motion, Defendant Yodis has provided his sworn declaration in which he attests that is a 23 year-employee of the Pennsylvania Department of Corrections, he is the Hearing Examiner for SCI Phoenix, and that a hearing was held on the misconduct charge (No. D257142) filed against Plaintiff by CO Kayden for possession of MDMA on June 10, 2019. Plaintiff was allowed to give his version of events, which he did in a written version, but Defendant Yodis attests that he nevertheless found him guilty "because there was a preponderance of evidence that existed that he had committed the charges and I relied on the Rapid Scan System Itemizer (Ion Scan) and the photos."  (Exhibit "C" to Def's Motion for Summary Judgment, ¶ 4(f)).  Mr. Yodis further declared:

> "The fact he had filed grievances did not play a part in my decision to find him guilty.  I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge."

Exhibit "C," ¶ 4(g).

Plaintiff has produced no evidence to rebut this declaration and we therefore find that sufficient evidence exists to substantiate the charge that MDMA was indeed found in Plaintiff's property and that this was the basis upon which he was found guilty of misconduct.  Insofar as keeping illegal drugs out of prisons is indeed a valid penological interest, summary judgment is appropriately entered in favor of Defendant Yodis.

   *4.  Defendants Tammy Ferguson and Andretta Golden.*

Defendants next seek the entry of judgment in favor of Defendants Tammy Ferguson and Andretta Golden, who are the Prison Superintendent and Unit Manager of A Block, respectively, on several grounds.  First, Defendants submit that neither Golden nor Ferguson had any personal involvement in Plaintiff having been placed in the Restricted Housing Unit or in his having been deprived of showers and exercise.  Second, they allege that Plaintiff in fact received due process for his misconduct; and third, as to the constitutional claim which arises out of his cell placement, neither a non-tinted cell window nor access to television are necessities of life.

To reiterate, "a defendant in a civil rights action must have personal involvement in the alleged wrongs" which may be shown through evidence "of participation or actual knowledge and

acquiescence." Jones v. Kirchenbauer, supra; Gerhold v. Wetzel,
No. 20-3398, 2021 U.S. App. LEXIS 15721 at *5, 2021 WL 2135950
(3d Cir. May 26, 2021)(both citing Rode v. Dellarciprete, 845
F.2d 1195, 1207 (3d Cir. 1988). Furthermore, "[t]o prevail
against prison officials on a claim that an inmate's conditions
of confinement violated the Eight Amendment, the inmate must
meet two requirements: (1) the deprivation alleged must be
'objectively, sufficiently serious,' and (2) the 'prison
official must have a sufficiently culpable state of mind.'"
Thomas v. Tice, 948 F.3d at 138 (quoting Farmer v. Brennan, 511
U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994)). In
considering whether conditions of confinement violated the
Eighth Amendment, courts must remember that "the Constitution
does not mandate comfortable prisons, and prisons which house
persons convicted of serious crimes, cannot be free of
discomfort." Id, at 138-139 (quoting Rhodes v. Chapman, 452
U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed.2d 59 (1981)). Thus,
"[t]he first element is satisfied when an inmate is deprived of
the 'minimal civilized measure of life's necessities,' and
"[t]he second element is satisfied when an inmate shows that
prison officials acted with deliberate indifference to the
inmate's health or safety or conditions of confinement that
violated the inmate's constitutional rights.'" Id (quoting

Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 115 L. Ed.2d 271 (1971)).

The gravamen of Plaintiff's claims against both Ferguson and Golden is that he submitted Request to Staff Member forms and reported the abuse and retaliation which he was suffering at the hands of the other defendants to Defendant Golden but neither she nor Superintendent Ferguson ever responded or took any action to ameliorate his complaints, despite having been "made aware" of them.  In doing nothing, Plaintiff contends that they "subjected" him "to cell conditions that impose atypical and significant hardship … in relation to ordinary conditions of prison life in the RHU without proper due process…"  (Compl., ¶s 17, 19, 37, 48).

Here, the cell conditions of which Plaintiff complains -- not being able to shower for an extended period or exercise when he wanted to, not being able to see out of a window or see the television or clock, are undoubtedly unpleasant but do not rise to the level of a deprivation of the 'minimal civilized measure of life's necessities' which is required to reach the dimension of unconstitutionality under the Eighth Amendment.  And, while Golden and Ferguson are charged with doing nothing to alleviate Plaintiff's discomforts, there is no evidence whatsoever that they were personally involved in his placement in the so-called sensory deprivation cell in the RHU or in denying him his shower

and exercise privileges.  (See, Pl's Dep., Exhibit "A," pp. 43-46).  Hence under the above-referenced authority, we conclude that summary judgment is properly now entered in favor of these two defendants as well.

### Conclusion

For all of the reasons set forth above, Defendants' motion for summary judgment is granted in part and judgment is entered in favor of Defendants Martinez, Bradley, Ferguson, Yodis and Golden as a matter of law on all of the plaintiff's claims against them and in favor of all of the Defendants in their official capacities.  The motion is otherwise denied with respect to Defendants Mejias, Webster, Kayden, and Lahr.

An Order follows.